Alexander G. LeVeque (NSB #11183)
aleveque@sdfnvlaw.com
Ross E. Evans (NSB #11374)
revans@sdfnvlaw.com
SOLOMON DWIGGINS & FREER, LTD.
9060 West Cheyenne Avenue
Las Vegas, Nevada  89129
Telephone: (702) 853-5483
Facsimile: (702) 853-5485

*Attorneys for Blue Basin Medical, LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| LUV N' CARE, LTD.<br>   Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>LINDSEY LAURAIN and EAZY-PZ, LLC,<br>   Defendants/Counterclaim Plaintiffs | Case No.: 2:18-cv-2224 |

**BLUE BASIN MEDICAL LLC AND BRADLEY LAURAIN'S OBJECTION TO AND MOTION TO RECONSIDER
ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL
(Oral Argument Requested)**

Third-party Blue Basin Medical, LLC ("**Blue Basin**") and Third-party Bradley Laurain ("**Mr. Laurain**"), hereby files this Objection and Motion to Reconsider this Court's December 18, 2018, Order, which required Blue Basin to produce documents responsive to a subpoena issued on July 9, 2018 (the "**Subpoena**") by December 28, 2018. [Dkt. 11 (the "**Order**")]. The foregoing Objection and Motion to Reconsider is made pursuant to LR IB 3-1, and is supported by the following memorandum of points and authorities, the pleadings and papers docketed in this case, and any oral argument the Court permits.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    Introduction**

As the Court is certainly aware, this proceeding concerns a subpoena issued by Plaintiff Luv N' Care, Ltd., ("**LNC**") to Blue Basin, on July 9, 2018, pertaining to an action pending in the

Western District of Louisiana, Case No. 3:16-cv-00777, against Defendants Lindsey Laurain and her company, EAZY-PZ, LLC ("**EZPZ**"). [Dkt. 1-5]. Blue Basin has been out of business since mid-to-late 2014,[1] and the company's charter was revoked by the Nevada Secretary of State for non-filing of its annual list and non-payment of fees.[2] On November 19, 2018, LNC initiated this proceeding upon its Motion to Compel Discovery from Blue Basin relative to the subpoena. [Dkt. 1] Thereafter, on December 19, 2018, an Order was entered by this Court granting LNC's Motion to Compel, and awarding fees against Blue Basin. [Dkt. 11].

On January 4, 2019, however, LNC filed its Motion to Hold Blue Basin and Brad Laurain in Contempt of this Court's December 18, 2018, Order, asserting that "Mr. Laurain was undisputedly aware of this Court's Order, had complete control over Blue Basin's documents, and as of the date of this Motion, failed and/or refused to produce them." [Dkt. 13 at 2]. Such Motion was served on Mr. Laurain on January 5, 2019. [Dkt. 14]. Since such time, Mr. Laurain has expeditiously sought to correct the record which has been grossly mischaracterized by LNC, and to protect himself with regard to LNC's allegations against Blue Basin and himself individually. Accordingly, Mr. Laurain filed a response on behalf of Blue Basin as to LNC's Memorandum of Fees and Costs [Dkt. 17], as well as a Response on behalf of himself and Blue Basin as to LNC's Motion for Contempt. [Dkt. 18]. Accordingly, and as more specifically detailed herein, Blue Basin and Mr. Laurain respectfully object to and seek reconsideration of this Court's Order dated December 19, 2018 [Dkt. 11] pursuant to LR IB 3-1.

## II.     Facts

Blue Basin was a limited liability company formed by managing members William Delaney, Andrew Michaud, and Mrs. Laurain's husband, Bradley Laurain. [Dkt. 17-1 at ¶4]. Prior to the formation of Blue Basin, William, Andrew, and Mr. Laurain previously worked as sales representatives for a medical products distributor, Covidien. [Dkt. 17-1 at ¶2-5] While at Covidien, William, Andrew and Mr. Laurain were let go as employees, and then re-hired as independent

---

[1] *See*, Declaration of Bradley Laruain. [Dkt 17-1 at ¶6].

[2] *See*, Nevada Secretary of State filing details for Blue Basin. [Dkt. 1-4].

contractors. *Id*. As part of this change, in July 2012, William, Andrew and Mr. Laurain formed Blue Basin. *Id*. Mr. Laurain only ever held a minority interest in the company. [Dkt 18-1 at ¶3] The day-to-day duties of their job, never changed, and both Andrew and Mr. Laurain continued to report to William Delaney. [Dkt. 17-1 at ¶5]. Blue Basin went out of business in mid-to-late 2014, at which time Mr. Laurain ended his involvement with Blue Basin and understood the company to have been dissolved. *Id*. at ¶6. Notwithstanding, it appears that Blue Basin was never formally dissolved.

However, after Blue Basin went out of business, the Nevada Secretary of State placed the company on default status for failing to continue to pay the annual fees and for failing to file the annual list of officers. [Dkt. 1-4] On July 31, 2015, the Nevada Secretary of State revoked Blue Basin's charter and business license. *Id*. Under Nevada law, the revocation of Blue Basin's charter is treated as putting the company into dissolution. *See, e.g.*, NRS 86.274.[3]

Knowing that Blue Basin's charter had been revoked and that the company was in dissolution since July 31, 2015, and, therefore, acting with imputed knowledge that the managing members hold the company's property in Trust pending dissolution, LNC served a subpoena on the defunct company's registered agent Incorp Services, Inc., on July 12, 2018. [Dkt 1-8] The subpoena required Blue Basin to respond by July 30, 2018, by producing documents to LNC's Nevada counsel in Las Vegas, Nevada. *Id*. However, as Mr. Laurain never controlled Blue Basin, and had not set up the relationship between Blue Basin and its registered agent, Incorp, Mr. Laurain was not served with the subpoena. [Dkt. 1-8]. Notably, although LNC served Mr. Laurain with a separate subpoena relating to the underlying lawsuit, LNC did not simultaneously seek any records from Mr. Laurain which concerned his activities at Blue Basin. [Dkt. 17-3]. Mr. Laurain fully complied with the subpoena LNC served upon him. [Dkt. 17-1 at ¶10.]

---

[3] NRS 86.274 states, in relevant part, that "[i]f the charter of a limited liability company is revoked and the right to transact business is forfeited, **all of the property and assets of the defaulting company must be held in trust by the managers** … *and* **the same proceedings may be had with respect to the property and assets as apply to the dissolution of a limited liability company** pursuant to NRS 86.505 and 86.521…" *See also*, *United States v. P .F. Collier & Son Corp.*, 208 F.2d 936, 937 (7th Cir.1953) (explaining that the effect of dissolution is determined by law of the state of incorporation).

After the defunct and non-operating Blue Basin failed to respond to the subpoena, LNC apparently mailed its registered agent, Incorp., with the October 23, 2018, Meet and Confer Letter. [Dkt. 1-1], and [Dkt. 1-7]. Mr. Laurain did not receive a copy of the Meet and Confer Letter. [Dkt 1-7]

Indeed, the first time Mr. Laurain received any notification in connection with the subpoena on Blue Basin was on December 20, 2018, after counsel for Defendants Lindsey Laurain and EZPZ, Mr. Garthe, Esq., contacted Mr. Laurain *after* LNC's counsel provided Defendants' counsel a copy of this Court's December 19, 2018 Order via email on December 20, 2018. [Dkt. 12-5]; [17-4 at ¶7]. Upon receipt of the Order on December 20, 2018, Defendants' counsel (who does not represent either Blue Basin or Mr. Laurain with respect to the instant proceeding),[4] represented to LNC's counsel that:

> **Earlier this week**, Brad found a box of hard-copy documents, some of which he said *may* **relate to Blue Basin**. If so, **I am not sure if they are responsive to the subpoena**. Brad also told me neither he nor his former business associate retained any electronic records at all.
>
> We were planning to meet to review the documents this week, but then his father passed away.
>
> Brad is currently in Michigan with his family. I will connect with him after the Holidays to find out if that box has any responsive materials in it. If so, we will of course produce.

*See*, Dkt. 12-5. (Emphasis added).

Defendants' counsel clarified in his Declaration that:

> At some time in December 2018, prior to December 20, 2018, Mr. Brad Laurain informed me that he had found a box of materials in his basement. According to Mr. Laurain, the box contained several, assorted items and documents not necessarily related to each other or related to the Underlying Action. At that time, he had not reviewed the documents, but knowing he had been subpoenaed in the lawsuit Luv N' Care, Ltd. v. Laurain et al., Case No. 3:16-cv-777 (W.D. La. 2016) (the "Underlying Action"), he notified me of the existence of the box.
>
> Mr. Laurain and I planned to meet during the week of December 17, 2018 to review these materials and determine if whether

---

[4] *See*, Declaration of Bradley Laurain. [Dkt. 18-1 at ¶5].

> supplementation of Mr. Laurain's subpoena response was necessary. This meeting did not occur because, unfortunately, Mr. Laurain's father passed away. Mr. Laurain left Colorado to be with his family in Michigan.
>
> After receiving Ms. Roth's email, I immediately contacted Mr. Laurain, who informed me that it was possible the box of materials included documents related to Blue Basin, but that he did not know what they were (if any). He also informed me that he otherwise did not know of any records kept by Blue Basin, or either of his former business partners.

*See*, Dkt. 17-4, at ¶¶ 4-5 and 7.

Thereafter, on January 5, 2019, Mr. Laurain was served, for the first time, with LNC's Motion for Contempt against Blue Basin and Mr. Laurain personally. [Dkt. 14 and Dkt. 18-1 at ¶4]. Mr. Laurain promptly engaged the undersigned counsel to represent his individual interests as it pertains to this proceeding as well as with respect to Mr. Laurain's interest as a former managing member of Blue Basin. Mr. Laurain and Blue Basin hereby object to this Court's December 19, 2018, Order, and request that the Court reconsider such Order.

### III.   Argument

#### A.   Standard for Objection to Magistrate Judge's Order in a Pre-Trial Matter.

A district judge may reconsider a magistrate judge's order in a pretrial matter only if that order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). This Court has held that "[t]his standard applies to orders concerning discovery motions." *See, Sneed v. Nevada*, No. 2:04CV 01773 RLH PAL, 2006 WL 2628044, at *1 (D. Nev. Sept. 13, 2006), citing *Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir.2002) (applying standard to pretrial matters involving discovery matters); *see also, Quixtar, Inc. v. Signature Mgmt. Team, LLC*, No. 3:07-CV-505-ECR-RAM, 2009 WL 10690927, at *4 (D. Nev. Apr. 8, 2009) (stating that "[a] district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case pursuant to LR IB 1-3 where it has been shown that the magistrate judge's ruling is clearly erroneous or contrary to law.") citing Local Rule IB 3-1 and 28 U.S.C. § 636(b)(1)(A)). The "contrary to law" standard only applies to the Magistrate Judge's legal conclusions, which are reviewed de novo. *Id*. However, for factual determinations, under the clearly erroneous standard, "the district judge can overturn the magistrate judge's ruling only if the district court is left with a definite and firm conviction that a

mistake has been made." *Sneed*, No. 2:04CV 01773 RLH PAL, 2006 WL 2628044, at *1 (D. Nev. Sept. 13, 2006), *citing Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F.Supp.2d 980, 983 (S.D.Cal.1998).

Accordingly, this Court should review the Magistrate's factual determinations for clear error, while legal conclusions are reviewed de novo.

### B. The December 19, 2018 Order is Contrary to Law and Should Be Reversed.

This Court should reconsider the December 19, 2018 Order, and enter an order denying the Motion to Compel because any claim by LNC including for enforcement of its subpoena against the revoked company, Blue Basin, was barred by operation of law, and there was no lawful basis for granting of Plaintiff's request for fees without first compelling Blue Basin to respond to the subpoena.

#### 1. The December 19, 2018, Order Should Be Reversed as Contrary to Law Because LNC's Remedies and Claims as to Blue Basin Were Barred by NRS 86.505(1).

A corporation's capacity to sue or be sued is determined by the law under which it was organized. *See, Quixtar, Inc. v. Signature Mgmt. Team, LLC*, No. 3:07-CV-505-ECR-RAM, 2009 WL 10690927, at *3 (D. Nev. Apr. 8, 2009), citing Fed. R. Civ. P. 17(b) and *Sierra Ass'n for Env't v. Fed. Energy Regulatory Comm'n*, 744 F.2d 661, 662 (9th Cir. 1984).

As set forth above, Blue Basin went out of business in mid-to-late 2014,[5] and by July 31, 2015 its charter to conduct business was revoked by the Nevada Secretary of State pursuant to NRS 86.274(2). [Dkt. at 1-4] Moreover, pursuant to NRS 86.274(5) a revoked company is treated for all purposes as a corporation in dissolution pursuant to NRS 86.505 and NRS 86.521.[6] While NRS

---

[5] *See*, Declaration of Mr. Laurain. [Dkt. 17-1 at ¶6].

[6] *See* NRS 86.274, stating in relevant part, that "[i]f the charter of a limited liability company is revoked and the right to transact business is forfeited, all of the property and assets of the defaulting company must be held in trust by the managers … and the same proceedings may be had with respect to the property and assets as apply to the dissolution of a limited liability company pursuant to NRS 86.505 and 86.521…" *See also, United States v. P .F. Collier & Son Corp.*, 208 F.2d 936, 937 (7th Cir.1953) (explaining that the effect of dissolution is determined by law of the state of incorporation).

86.505(1) provides that "[a] dissolved company continues as a company for the purpose of prosecuting and defending suits, actions, proceedings and claims of any kind or nature by or against it…" the statute further provides, however, that "the dissolution of a limited-liability company **does not impair any remedy or cause of action available to or against it or its managers or members commenced … within 3 years after the date of dissolution with respect to any other remedy or cause of action**." (Emphasis added). The foregoing action, filed November 19, 2018, was plainly commenced three years after Blue Basin's dissolution pursuant to NRS 86.505(1), which under Nevada law, serves as an absolute bar of any remedy or cause of action available against the company or its members.

Here, Plaintiff was well aware of Blue Basin's revoked status at the time it served its subpoena on Blue Basin's registered agent, as it no doubt discovered the same while determining how to serve its subpoena. Indeed, LNC included the Nevada Secretary of State filing details for Blue Basin in its Motion to Compel. [Dkt. 1-4] The Magistrate's Order, however, fails to consider the effect of Blue Basin's revoked status, from July 31, 2015, on LNC's efforts to compel Blue Basin to respond to its untimely subpoena and Motion to Compel. [Dkt. 11] Thus, this Court should have considered the applicable law concerning companies which have long been out of business, and for which claims requiring the defunct company's response have been made beyond the three-year statute of limitation for dissolved companies. Indeed, this Court should have considered that as a result thereof, Blue Basin does not have a functioning base of operations, does not, as an entity, maintain its prior property or records,[7] nor have any funds from which it could hire and retained counsel to respond to the subpoena or respond to the motion to compel.[8] Moreover, the former

---

[7] *See, e.g.*, NRS 86.274(5), stating, in relevant part that "…all of the property and assets of the defaulting company must be held in trust by the managers…"

[8] *See, e.g., U.S. E.E.O.C. v. Ayala AG Servs.*, No. 1:13-MC-00032-SKO, 2013 WL 5670901, at *2 (E.D. Cal. Oct. 15, 2013) (stating that "[A] corporation may appear in the federal courts only through licensed counsel."), citing *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993); *see also United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir.1993) (per curiam).

managing members have not communicated with each other concerning the subpoena, nor the Motion to Compel, frustrating Blue Basin's ability to protect its interests or otherwise respond to the subpoena. [Dkt. 17-1 at ¶¶ 7-8]

This is not to assert that LNC is left without a reasonable avenue for discovery as to Blue Basin records which it believes may be in existence. LNC should have sought the information in the subpoena from the former managing members directly.[9] However, LNC has chosen, opportunistically, to aggressively litigate a default against a non-entity, and then sought to impose its fees in doing so against only one of the managing members, only because such person is the Defendant's husband in the underlying litigation.

Here, this Court should reconsider the Order, and ask LNC to pursue discovery directly against the managing members rather than the defunct entity. Indeed, "…for the purposes of a Rule 45 subpoena, a document is within a witness's "possession, custody, or control" if the witness has the practical ability to obtain the document." *Babaev v. Grossman*, No. CV03–5076 (DLI)(WDW), 2008 WL 4185703 at *3 (E.D.N.Y. Sept. 8, 2008) ("Documents are under a party's control when it has the right, authority or practical ability to obtain them from a non-party."); *see also*, *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) (stating that "[t]he party seeking production of the documents … bears the burden of proving that the opposing party has such control."). Under NRS 86.274(5), the managing members of a company whose charter has been revoked hold the company's property as trustees. Thus, LNC should have been required to demonstrate that Blue Basin, as opposed to the individual members, continued to hold its company records. The Magistrate Judge erred as a matter of law by compelling Blue Basin to produce responsive records where LNC had not made any showing that Blue Basin in fact possessed any records due to its revoked status.

It is clear Blue Basin has no operational or organizational existence, it has no headquarters, no office, no hub, no assets, no property, and no records. Rather, Blue Basin has former managing

---

[9] Indeed, NRS 86.274(5) provides in relevant part that "…all of the property and assets of the defaulting company must be held in trust by the managers…"

1 members. One of whom, Mr. Laurain, who was first served with anything to do with this proceeding
2 on January 5, 2019, hereby seeks that this Court reconsider and make a determination on the Motion
3 to Compel being fully advised of the operative facts and law, and that this Court enter an Order
4 denying the Motion to Compel as no responsive records exist. [Dkt. 17-1 at 9]

   **2. The December 19, 2018 Order Should Be Reversed as Contrary to Law For Awarding Plaintiffs' Attorneys' Fees Prior to Finding Blue Basin in Contempt.**

7 This Court's December 19, 2018, Order provides, in pertinent part, "Plaintiff argues it is
8 entitled to recover attorney's fees incurred as a result of this Motion, pursuant to Rule 45. Federal
9 Rule of Civil Procedure 45(g) permits the court to hold in contempt a person who, having been
10 served, fails without adequate excuse to obey the subpoena or an order related to it. The Court will
11 therefore grant Plaintiffs request for attorney's fees." [Dkt. 11, at 2.] This Court further Ordered that
12 "Plaintiff is entitled to an award of reasonable attorney's fees and costs incurred in filing the instant
13 motion." *Id.*

14 However, "[u]nlike Rule 37, Rule 45 contains no express provision for awarding attorneys'
15 fees or sanctions to a party that has prevailed on a motion to compel compliance with a subpoena
16 duces tecum." *N.L.R.B. v. Midwest Heating And Air Conditioning, Inc.*, 528 F. Supp. 2d 1172, 1181
17 (D. Kan. 2007); *see also, In re Plise*, 506 B.R. 870, 879 (B.A.P. 9th Cir. 2014) (holding that "in
18 cases of nonparty subpoenas under Civil Rule 45, the court must first issue an order compelling the
19 nonparty's compliance with the subpoena, and the nonparty must fail to comply with the order
20 before any contempt sanctions can be awarded… The remedy under Civil Rule 37(a)(5) of awarding
21 a party its reasonable expenses incurred in bringing a motion to compel before a discovery order is
22 entered was simply not available here; the … court abused its discretion when it imposed the
23 sanction [for] attorney's fees"). As the Court found in In re Plise, the Court abused its discretion
24 when it awarded Plaintiff its reasonable attorneys' fees pursuant to Fed. R. Civ. P. 45(g) prior to
25 compelling Blue Basin's compliance with the subpoena, and prior even to LNC filing its Motion to
26 hold Blue Basin in contempt.

Additionally, pursuant to Rule 45(g), a court may order the subpoenaed party to comply with the subpoena. *See In re Subpoenas Addressed To Fish & Naeve*, 519 F.2d 116, 117 (8th Cir. 1975) (after district court's contempt finding, remanding to district court with order that appellants "comply with the subpoenas by submitting the documents for in camera inspection by" the district court); *see also U.S. Securities and Exchange Comm'n v. Hyatt*, 621 F.3d 687, 694 (7th Cir. 2010) (where subpoenaed party "did not serve a written objection or move to quash or modify the subpoenas" the party that served the subpoenas could either seek an order compelling compliance or initiate contempt proceedings).

Accordingly, as a result of the plain error of law in the Order, this Court should reconsider and deny the Order. In addition, this Court should consider the circumstances that LNC served a subpoena against a defunct and legally non-existent company, and essentially secured a default judgment against the same. As Mr. Laurain is presently before the Court, having been served with Plaintiff's Motion for Contempt, and for the first time having received by personal service a copy of the Subpoena. Indeed, this Court should accept Mr. Laurain's Declaration that he and Blue Basin are in compliance with the subpoena as neither he, nor upon information and belief, Blue Basin have any responsive records. [Dkt. 17-1 at ¶9; Dkt. 18-6].

### C. The December 19, 2018 Order Should Be Reversed Due to Clearly Erroneous Factual Determinations.

This Court should reverse the December 19, 2018, Order as it contains factual determinations which are clearly erroneous. Here, the Order finds that "Plaintiff's counsel … sent a letter ("Meet and Confer Letter") to Blue Basin regarding its lack of response to the Subpoena and proposing dates and times for a meet and confer conference. This letter was served on Blue Basin's registered agent. Here, the Order fails to consider the effect of serving the subpoena and meet and confer letter on a defunct entity's registered agent, where the Plaintiff in its Motion to Compel singled out and specifically highlighted LNC's allegations concerning Defendants' husband, Mr. Laurain. Indeed, LNC states in its Motion to Compel that:

> a. During the months immediately preceding and following EZPZ's formation in 2014, **Mr. Laurain led nonparty Blue**

> **Basin, a Nevada limited liability company, where he was a founder and managing member**. [Dkt. 1 at 3-4].
>
> b. LNC believes that, **at Blue Basin, Mr. Laurain** and/or his colleagues **exchanged, authored, or received documents or communications concerning EZPZ or Ms. Laurain that are highly relevant to EZPZ's counterclaims against LNC**. [Dkt. 1 at 4]
>
> c. Ms. Laurain researched comparable existing products before she submitted her utility patent application. **LNC has reason to believe that she communicated with Blue Basin** about this research. [Dkt. 1 at 4]
>
> d. LNC contends that EZPZ submitted false information to the USPTO by misrepresenting that Ms. Laurain was the sole inventor of the Happy Mat when, previously, **EZPZ's own website identified *Mr. Laurain* as the person who came up with the idea for the Happy Mat**. At a minimum, **Mr. Laurain was a co-inventor** whose identity EZPZ was required to disclose to the USPTO under 35 U.S.C. § 116. [Dkt. 1 at 4]

*See*, Dkt. 1, at 3-4.

While LNC couched its allegations in some of the above instances as to Blue Basin, or Mr. Laurain's colleagues, at Blue Basin, the subpoena is much more specific that LNC seeks records documenting the activities of Mr. Laurain. For instance, the subpoena does not seek records related to Mr. Laurain's colleagues or other employees at Blue Basin, rather it seeks information relating only to Mr. Laurain:

> 1. All documents, e-mails, texts, letters, facsimiles, memos, handwritten and/or typed messages, notes, and any other communications, for the period January l, 2014, to December 31, 2014, **in any way relating to Brad Laurain** and to the following words and phrases: mat, bowl, placemat, mealtime or meal time, plate, feeding, tablewear or table wear, "GOD-Bl," "go with dog," patent, silicone, suction, adhesion, self-sealing, scalable, surface contact, "ezpz," "eazy-pz," or consumer goods.
>
> 2. For the period January 1, 2014, to December 31, 2014, any information in your possession, custody, and control in any way relating to, **internet searches performed by Brad Laurain**, on any search engine or browser, as to the following words and phrases: mat, bowl, placemat, mealtime or meal time, plate, feeding, tablewear or table wear, "GOD-Bl," "go with dog," patent, silicone, suction, adhesion, self-sealing, sealable, surface contact, "ezpz," "eazy-pz," or consumer goods.
>
> 3. All documents evidencing **any reason why Brad Laurain left your employment**.

4. For the time period January 1, 2014, through the end of Brad Laurain's employment with you, **any confidentiality agreement that exists or existed between you and Brad Laurain**.

5. **For the time period January 1, 2014, through the end of Brad Laurain's employment with you**, any privacy policy that exists or existed concerning the email accounts of your employees and/or contractors.

*See*, Subpoena. [Dkt. 1-5, at 6-7].

Indeed, the discovery LNC seeks from Blue Basin is duplicated by the discovery LNC already imposed upon Mr. Laurain individually. [Dkt. 17-3 at 7]

Despite seeking information from Blue Basin related solely to Mr. Laurain, LNC did not serve Mr. Laurain with a copy of the subpoena. Further, LNC did not seek a meet and confer with Mr. Laurain. LNC did not serve Mr. Laurain with this Court's December 19, 2018 Order. In fact, the first time Mr. Laurain received proper notice, by service, of these proceedings was on January 5, 2018, when LNC served Mr. Laurain with its Motion for Contempt by which LNC sought to hold Mr. Laurain personally liable for Blue Basin's failure to respond to the subpoena and failure to comply with this Court's December 19, 2018 Order. Here, as Mr. Laurain never received service of the Subpoena, or Meet and Confer, especially where LNC alleges that "Mr. Laurain led nonparty Blue Basin, … where he was a founder and managing member" ([Dkt. 1 at 3-4]) it was clear error for this Court to grant LNC's Motion where Mr. Laurain had not been personally served nor provided an opportunity to meet and confer concerning the subject of the subpoena.

Moreover, by granting the Motion to Compel, this Court implicitly found that LNC met its meet and confer obligations, despite its failure to communicate with Mr. Laurain directly. Here, however, this Court should determine there was clear error in making such imputed finding because LNC went through great-lengths to avoid speaking with Mr. Laurain, and instead surreptitiously circumnavigated him to effectively try to enforce a contempt against defaulting defunct entity. Plaintiff did not act reasonably in sending its Meet and Confer letter only to the defunct company's

registered agent[10] where LNC sought records pertaining only to Mr. Laurain, or where LNC would ultimately attempt to hold Mr. Laurain unilaterally liable for Blue Basin's contempt. [Dkt. 18]

In addition, this Court should grant the foregoing Objection and Motion for Reconsideration due to the fact that neither Blue Basin nor Mr. Laurain have responsive documents. Here, this Court's Order requires that "Blue Basin shall produce all responsive documents requested by the topics set forth in the Subpoena no later than December 28, 2018. [Dkt. 11 at 2] However, Mr. Laurain's declarations establish that neither he, nor Blue Basin, have responsive records, and thus, Blue Basin is actually in compliance with the subpoena. [Dkt. 17-1 at 9].

Accordingly, as clear error exists in the Magistrate Judge's Order, this Court should reconsider and reverse the Order.

## IV.    Conclusion

Accordingly, Blue Basin and Mr. Laurain respectfully request that this Court (1) grant the foregoing Objection and Motion to Reconsider this Court's December 19, 2018 Order pursuant to LR IB 3-1, and (2) vacate the December 19, 2018 Order for the following reasons:

(1)    Neither Blue Basin nor Mr. Laurain have responsive records;

(2)    Plaintiff's claims and remedies as against Blue Basin are barred as having been made more than three years after Blue Basin's effective dissolution following the revocation of its charter pursuant to NRS 86.274(5) and NRS 86.505(1);

(3)    The December 19, 2018 Order was erroneous for awarding Plaintiff attorneys' fees without a predicate finding that Blue Basin was in contempt;

(4)    Neither Blue Basin nor Mr. Laurain were effectively served with the subpoena due to Blue Basin's revoked status and failure to serve the subpoena or Motion to Compel on Mr. Laurain individually; and

---

[10] *See*, Return Receipt for Certified Mailing of Meet and Confer Letter to Blue Basin's registered agent. [Dkt 1-7]

(5)     Plaintiff did not adequately comply with the Meet and Confer requirements nor attempt in good faith to avoid undue burden and costs on the non-parties it now seeks to hold in contempt.

Dated this 25th day of January, 2019

Respectfully submitted,

/s/ Alexander G. LeVeque

Alexander G. LeVeque (NSB #11183)
aleveque@sdfnvlaw.com
Ross E. Evans (NSB #11374)
revans@sdfnvlaw.com
SOLOMON DWIGGINS & FREER, LTD.
9060 West Cheyenne Avenue
Las Vegas, Nevada  89129
Telephone: (702) 853-5483
Facsimile: (702) 853-5485

*Attorneys for Blue Basin Medical, LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on 25th day of January 2019, I electronically filed the foregoing paper with the Clerk of the Court using CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the Court's electronic filing system.

*/s/ Sherry Curtin-Keast*

An employee of Solomon Dwiggins & Freer, Ltd.