# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\*\*\*

LUV N' CARE, LTD.,

    Plaintiff,

v.

LINDSEY LAURAIN, *et al.*,

    Defendants.

Case No.: 2:18-cv-02224-JAD-EJY

**ORDER**

    Before the Court is Plaintiff Luv N' Care, Ltd.'s ("LNC") Motion for Attorney's Fees (ECF No. 12), and Plaintiff's Motion to Hold Blue Basin Medical, LLC ("Blue Basin") and Bradley Laurain in Contempt (ECF No. 13). The Court has considered Plaintiff's Motions, Blue Basin's Response to Plaintiff's Memorandum of Attorney's Fees and Costs (ECF No. 17), Blue Basin and Bradley Laurain's Response to Plaintiff's Motion for Contempt (ECF No. 18), and Plaintiff's Replies (ECF Nos. 19, 22). The Court finds as follows.

## Background

    On July 9, 2018, LNC issued a subpoena to interested party Blue Basin out of the United States District Court for the Western District of Louisiana in the matter pending as *Luv N' Care, LTD. v. Lindsey Laurain, Eazy-PZ, LLC,* No. 3:16-cv-00777-TAD-JPM. Blue Basin failed to answer the Subpoena or otherwise respond. ECF No. 1 at 5:8-11; ECF No. 1-2, ¶ 7; ECF No. 1-6, ¶ 11; ECF No. 13 at 3:9-10. On October 16, 2018, LNC sent a meet and confer letter to Blue Basin's registered agent Incorp. Services, Inc. ("Incorp."), and Mr. William Delaney (one of Blue Basin's three managing members) seeking to informally resolve the matter. ECF No. 19 at 2:20-22. Although Incorp. signed the return receipt for the meet and confer letter, Blue Basin did not respond.[1] ECF No. 19 at 2:22-24.

---

[1] The parties do not discuss whether Mr. Delaney responded to the meet and confer letter, but the lack of evidence to the contrary leads to the reasonable inference that he did not.

1

On November 19, 2018, LNC filed a Motion to Compel Blue Basin to produce documents responsive to its subpoena in this Court. ECF No. 1. On December 19, 2018, the Court granted LNC's Motion, finding Blue Basin in contempt of LNC's subpoena, ordering Blue Basin to "produce all responsive documents . . . no later than December 28, 2018," and awarding LNC attorney's fees and costs arising from LNC's Motion to Compel. ECF No. 11 at 2:11-15. Despite this Court's Order, Blue Basin did not produce any documents.

LNC now alleges Mr. Laurain caused Blue Basin to withhold responsive documents when the Court entered its Order granting LNC's Motion to Compel. ECF No. 13 at 3:24-5:6. LNC believes Mr. Laurain possesses an ulterior motive to withhold documents because he is married to Lindsey Laurain, the founder and sole owner of Eazy-PZ, LLC ("EZPZ"), which is the Defendant in the underlying Louisiana action. ECF No. 1 at 2:21-4.

LNC's attorneys sent a copy of the Court's December 19, 2018 Order to EZPZ's in-house counsel, Zac Garthe ("Garthe"), on the day it was docketed because LNC mistakenly believed Garthe was acting as Blue Basin's counsel. ECF No. 12-1, ¶¶ 33-38; ECF No. 13 at 3:26-28; ECF No. 17-4, ¶ 3. Garthe responded within an hour of receipt stating, in part:

> Earlier this week, Brad found a box of hard-copy documents, some of which he said may relate to Blue Basin. If so, I am not sure if they are responsive to the subpoena. Brad also told me neither he nor his former business associate retained any electronic records at all. We were planning to meet to review the documents this week, but then his father passed away. Brad is currently in Michigan with his family. I will connect with him after the Holidays to find out if that box has any responsive materials in it. If so, we will of course produce.

ECF No. 12-5 ("Garthe email"). When Blue Basin and Mr. Laurain did not produce responsive documents by the Court's December 28, 2018 deadline, the instant motions and related filings followed.

**Discussion**

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 45(g) permits a court to hold a nonparty in contempt who, having been served, fails without adequate excuse to obey the subpoena or an order related to it. Once the moving party demonstrates by clear and convincing evidence that the contemnor has violated a clear and specific court order, the burden shifts to the contemnor to demonstrate that he or she took every reasonable step to comply, and to articulate reasons why

2

compliance was not possible. *Bademyan v. Receivable Mgm't Services Corp.*, No 2:11-cv-00154-GMN-NJK, 2009 WL 605789, *2 (D. Nev. March 9, 2009). The "clear and convincing" standard is more demanding than the preponderance of the evidence standard generally applicable in civil cases. *Battaglia v. United States*, 653 F.2d 419, 422 (9th Cir. 1981); *United States v. Powers*, 629 F.2d 619, 626 n.6 (9th Cir. 1980). To assess the extent to which the contemnor has taken "every reasonable step" to comply with the court order, the court may consider (1) a history of noncompliance, and (2) a failure to comply despite the pendency of a contempt motion. *Bademyan*, 2009 WL 605789 at *2 (citations omitted).

As a threshold matter, the Court finds Magistrate Judge George W. Foley, Jr.'s December 19, 2018 Order was clear and specific: "Blue Basin shall produce all responsive documents, requested by the topics set forth in the Subpoena no later than December 28, 2018." ECF No. 11 at 2:10-12. Further, as explained below, the Court also finds LNC has demonstrated by clear and convincing evidence that Blue Basin and Mr. Laurain violated the abovementioned Order. The Court further finds Blue Basin and Mr. Laurain failed to take any reasonable steps to comply with the Order considering the interested parties' history of noncompliance despite having previously been held in contempt.

LNC argues Blue Basin should be held in contempt for failing to comply with this Court's order to produce responsive documents to its subpoena. ECF No. 13 at 5:11-13. LNC also argues that Mr. Laurain, Blue Basin's managing member, should be held in contempt, because he told Garthe that he possessed potentially responsive documents, but failed to review and produce them by the deadline. ECF No. 1-4, ¶ 7; ECF No. 12-5; ECF No. 13 at 5:6-7; ECF No. 22 at 8, ¶ 12-14. "Because Mr. Laurain controls Blue Basin, and Blue Basin appears to be insolvent," LNC asks the Court to hold Mr. Laurain jointly and severally liable with Blue Basin for all fees and costs awarded in connection with enforcing the subpoena, order Blue Basin and Mr. Laurain to produce the responsive documents immediately without any further delay, and award LNC attorney's fees and costs incurred in connection with this motion. ECF No. 13 at 5:14-16.

Blue Basin and Mr. Laurain respond to LNC's Motion by saying they are not in contempt because they had no knowledge of the Order until after the deadline to respond had passed. ECF

3

No. 18 at 4:10-6:17. Specifically, Blue Basin states it had notice of this Court's Order for the first time on January 4, 2019, when a copy of LNC's Memorandum of Fees and Costs was served on Incorp. ECF No. 18 at 4:19-21. Mr. Laurain states he was never served with a copy of the Order at all. ECF No. 18 at 4:22. On the other hand, LNC argues both Blue Basin and Mr. Laurain first received notice of this Court's Order from LNC's Motion to Compel, which was "undisputedly served at Blue Basin's registered agent [Incorp.] on November 20, 2018." ECF No. 22 at 3:27-4:1. Further, LNC argues that Blue Basin and Mr. Laurain received actual notice of the Court's Order on December 20, 2018, the day the Order was electronically docketed. ECF No. 13 at 6:16-17.

Both parties concede EZPZ's in-house counsel contacted Mr. Laurain immediately upon receiving the Garthe email from LNC's counsel. ECF No. 18 at 5:22-24; ECF No. 22 at 5:9-10. However, the parties dispute whether Garthe discussed this Court's Order with Mr. Laurain. ECF No. 18 at 5:7-6:4; ECF No. 22 at 5:7-24. Blue Basin and Mr. Laurain argue Mr. Garthe's awareness of the Order "cannot be imputed to Mr. Laurain, or by extension, Blue Basin," because Garthe was acting as EZPZ's in-house counsel. ECF No. 18 at 6:16-17. In support, Blue Basin and Mr. Laurain point to LNC's service of the underlying subpoena, meet and confer letters, and Motion to Compel on Incorp. as evidence of Plaintiff's "bad faith" management of service and notice. ECF No. 18 at 14:1-17. However, and "[s]till further, in order to effect service on Mr. Laurain personally of this Motion, LNC sent a process server to his home in Colorado." ECF No. 18 at 14:5-7.

Blue Basin and Mr. Laurain's lack of notice argument is not compelling. The interested parties contradict themselves in their filings with the Court. On page 13, lines 14 through 17, they argue "Mr. Laurain . . . could have easily been reached through Mr. Garthe or by just sending the letter to Mr. Laurain's personal address . . . ." ECF No. 18 at 13:14-17. Elsewhere, Blue Basin and Mr. Laurain argue that if "LNC genuinely believed Garthe was acting as Blue Basin's counsel, then [LNC] should have served communications, such as the meet and confer letter and relevant motions, on Blue Basin directly via its registered agent Incorp." ECF No. 17 at 4:25-5:1.

Next, Mr. Laurain argues he should not personally be held in contempt for Blue Basin's failure to produce responsive documents. ECF No. 17 at 2:20-21. Mr. Laurain, distinguishing himself as one of three founding, managing members of Blue Basin, maintains he is not one and the

4

same as the company.  ECF No. 18 at 9:20-21.  Mr. Laurain states that Blue Basin has been out of business since mid-to-late 2014,[2] and that the Nevada Secretary of State revoked the company's charter for non-filing of its annual list and non-payment of fees in or about 2015.[3]  Mr. Laurain contends he "had no involvement with Blue Basin after [he] left," and has been unable to contact the other two founding members of Blue Basin following his departure.  ECF No. 17-1, ¶¶ 6-8.  In conclusion, Mr. Laurain accuses LNC of engaging in duplicative and opportunistic discovery, having separately deposed him on May 3, 2018, and served him with a subpoena on August 29, 2018.  ECF No. 18 at 3:6-14.

Blue Basin's revoked status does not change the Court's findings today.  When Nevada revokes a limited-liability company's ("LLC") charter, the LLC's "right to transact business is forfeited."  NRS 86.274(2).  Notwithstanding, the right to transact business that is forfeited on charter revocation does not normally include a domestic LLC's capacity to be sued and be sued.  *AA Primo Builders, LLC v. Washington*, 126 Nev. 578, 585 (Nev. 2010); *see also In re Krause*, 546 F.3d 1070 (9th Cir. 2008) (certifying to the Nevada Supreme Court the parallel question of whether a domestic corporation whose charter has been revoked under NRS 78.175 may prosecute a lawsuit either (a) in its own corporate name or (b) through its directors).  Upon revocation, an LLC's "property and assets . . . must be held in trust by the managers . . . and the same proceedings may be had with respect to its property and assets as apply to the dissolution of a limited-liability company pursuant to NRS 86.505 and 86.52."  NRS 86.274.  In relevant part, a dissolved company continues as a company for the purposes of "defending suits, actions, proceedings and claims of any kind or nature by or against it," collecting and discharging its obligations, and disposing and conveying its property, but not for the purpose of continuing the business for which it was established.  NRS 86.505.

The Court notes Blue Basin and Mr. Laurain argue in their Objection to and Motion to Reconsider Order Granting Plaintiff's Motion to Compel (ECF No. 21) that LNC's subpoena was filed more than three years after Blue Basin's status was revoked by Nevada's Secretary of State (ECF No. 1-4), and therefore, is untimely.  Blue Basin cites to NRS 86.505, bolding and underlining

---

[2] *See* Decl. of Bradley Laurain.  ECF No. 17, ¶ 6.

[3] *See* Nevada's Secretary of State filing details for Blue Basin.  ECF No. 1-4.

5

the statutory language, while leaving out the operative words "in the exercise of reasonable diligence." ECF No. 21 at 6:21-7:6. Further, Blue Basin admits the subpoena was issued July 9, 2018, and there is no dispute that it was served on July 12, 2018. ECF No. 1-4 at 1:20, 27; 3:14-15. Thus, this argument is meritless.

Nevada law makes clear that Mr. Laurain, as one of three managers of Blue Basin, the defaulting company, was responsible for holding in trust all of its property and assets, including potentially responsive documents to a subpoena. There is no question that Blue Basin continues as a company, as it is now defending itself from LNC's Motions for Contempt and Attorney's Fees. By Mr. Laurain's own admission, Blue Basin was ostensibly formed for medical products distribution and not for litigation purposes. ECF No. 17-1, ¶¶ 2. Even assuming the federally issued subpoena is subject to NRS 86.505, the subpoena was issued and served within three years of Blue Basin's de facto dissolution, and therefore, it was timely. Accordingly, Blue Basin, notwithstanding its revoked status, is liable for its refusal to comply with LNC's subpoena and this Court's subsequent Order.

"[T]o be held liable in contempt, it is necessary that a nonparty respondent must either abet the defendant [in violating the court's order] or be legally identified with him." *NLRB v. Sequoia Dist. Council of Carpenters*, 568 F.2d 628, 633 (9th Cir. 1977) (quotation omitted). A nonparty corporate officer can be held in contempt if the moving party demonstrates the officer had notice of the order to the defendant corporation. *1st Tech., LLC v. Rational Enter. Ltda*, No. 2:06-cv-01110-RLH-GWF, 2008 WL 4571057, at *8 (D. Nev. Jul 29, 2008). Put another way, an order to a corporation or another entity[4] binds those who are legally responsible for the conduct of its affairs. *United States v. Laurins*, 857 F.2d 529, 535 (9th Cir. 1988) (citations omitted). The Supreme Court has held:

> [A] command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.

*United States v. Wilson*, 221 U.S. 361, 376 (1911).

---
[4] As previously noted, Blue Basin is organized as a limited-liability company. ECF No. 1-4 at 2.

In *Laurins*, the Ninth Circuit affirmed a managing director's conviction of obstruction of justice and aiding, abetting, and causing contempt of court, in connection with an Internal Revenue Service ("IRS") investigation of Gold Depository and Loan Company, Inc. ("GDL"). 857 F.2d at 533. The IRS initially sent a letter to GDL informing it of the investigation and requesting certain documents. *Id*. Attorney Bart Lee, whom Laurins had hired to represent GDL and himself, requested more time to respond to the letter but ultimately failed to do so. *Id*. Thereafter, an IRS summons was served on GDL, requesting production for inspection and copying records related to the investment scheme. *Id*. Lee informed the IRS that GDL was no longer doing business in San Francisco and that its only office was in Maryland, and took the position that the summons was not properly served. *Id*. GDL produced no documents in response, and therefore, the district court issued an order to enforce the summons. *Id*. at 533-34. Immediately prior to the order, Laurins ordered employees to box company records, "removed the boxes from the office[,] and on several subsequent occasions produced copies of documents from the boxed records for at least one employee." *Id*. After GDL's president and designated agent produced no records, the district court entered an order of contempt against GDL for willfully failing to comply with the summons. *Id*. GDL still did not comply. *Id*. at 534. Following the execution of a search warrant on Laurins' home, the district court charged and convicted him with obstruction of justice and aiding, abetting, and causing contempt of court. *Id*. On appeal, Laurins argued he had "dissociated himself from GDL by the time the summons issued, and because he was neither GDL's agent nor its representative . . . he had no obligation to respond to the summons and cannot be held in contempt . . . ." *Id*. at 535. The Ninth Circuit rejected this argument, finding Laurins could properly be found in contempt for aiding and abetting GDL because there was ample evidence demonstrating he exercised at least de facto control over the company after the summons issued. *Id*. at 535-36.

The Court finds the facts of *Laurins* are sufficiently analogous to the present case to be instructive. Mr. Laurain exercised de facto control over his company throughout these proceedings: he is one of three managing members authorized to act on behalf of Blue Basin; he is the only officer who has acted on behalf of Blue Basin in connection with the subpoena; and, he has taken up the

task of locating documents potentially responsive to the subpoena. In fact, Mr. Laurain phoned Attorney Garthe to discuss the box of potentially responsive Blue Basin documents and planned to review the same.

Once Blue Basin, a nonparty, was served with a subpoena, it could not delegate its obligation to respond to a third party, especially when Blue Basin is the entity that is in control of any company documents sought. *Corrales v. Castillo*, No. 2:07-cv-00141-LRH-LRL, 2008 WL 4186233, at *1 (D. Nev. Sept. 3, 2008) (providing a nonparty may not avoid discovery obligations by charging them to his attorney, particularly when the nonparty has control over the businesses which apparently retain many of the subpoenaed documents). Despite clear evidence to the contrary, Blue Basin maintains that it had no obligation to respond to LNC's Motion to Compel because service was not perfected, echoing GDL's unsuccessful argument that it had no obligation to respond to the IRS summons because of improper service. This Court finds the Ninth Circuit's analysis instructive on this point: "it is Laurins' failure to obey the court order, not the summons itself, that is at issue in his conviction for contempt. A court order binds parties and those in active concert with parties who have actual knowledge of the order." *Laurins*, 857 F.2d at 535. As established above, the Court ordered Blue Basin, and therefore bound, Mr. Laurain to comply with the Court's order as he is legally responsible for the conduct of Blue Basin's affairs. Accordingly, the Court finds Mr. Laurain, acting as Blue Basin's managing member, did not take any reasonable steps to comply with this Court's Order, and therefore, should be held jointly and severally liable with Blue Basin for contempt on this basis alone.

Blue Basin and Mr. Laurain finally argue that they are not in contempt of the Court's Order, because neither is in possession of responsive documents. It is undisputed Mr. Laurain looked for and found potentially responsive Blue Basin documents before the Court issued its Order, but did not turn them over for review or seek a deadline extension. ECF No. 12 at 2, n.1; ECF No. 12-5; ECF No. 13 at 2:8-10; ECF No. 18 at 8:1-8; ECF No. 22 at 6:8-23. Garthe planned to meet Mr. Laurain during the week of December 17, 2018 to review these materials for responsiveness to his personal subpoena, but this meeting did not occur because Mr. Laurain's father passed away. ECF No. 17-4, ¶¶ 4-5. In Mr. Laurain's Affidavit to the Court, he declares: "Blue Basin has no documents

related to the lawsuit between LNC and [his] wife's company, Eazy-PC, LLC. [Mr. Laurain does] not believe [Blue Basin] ever had any documents related to the lawsuit." ECF No. 17-1, ¶ 9. Blue Basin and Mr. Laurain reaffirm this position in their response to Plaintiff's Motion for Contempt when they state: "[t]here is literally nothing more Blue Basin or Mr. Laurain could do to comply with either the Subpoena or the Order . . . having produced all documents responsive to the Subpoena (none) by December 28, 2018." ECF No. 18 at 7:12-15.

The Court finds that even if Blue Basin and Mr. Laurain are not in possession of responsive documents, they incurred a duty to review the potentially responsive documents and respond to the Court's Order in a timely fashion or otherwise notify the subpoenaing party of the need for an extension based on unforeseen circumstances such as a death in the family. A party cannot simply ignore the Court's Order until Motions for Contempt and for Attorney's Fees are filed. Contempt is not appropriate if a party's action appears to be based on a good faith and reasonable interpretation of a court order, but here there is no doubt about the interpretation of the Court's Order and the good faith explanation—a death in the family—does not explain why Blue Basin and Mr. Laurain did nothing until the contempt motion was filed. *In re Dual Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (citation omitted).

It is true that when a nonparty raises timely objections to a subpoena, the nonparty is not required to produce documents, or even search for them, until the propounding party obtains an order directing compliance. *Genx Processors Mauritius Ltd. v.* Jackson, No. 2:14-cv-01938-APG-PAL, 2018 WL 5777485, at *9 (D. Nev. Nov. 2, 2018) (citing *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 & n.5 (9th Cir. 1983)). But, here, there was no timely objection. It is undisputed that LNC obtained the Court's Order directing compliance *before* the interested parties raised any objections to the subpoenas. The Garthe email, which revealed Mr. Laurain "found a box of [potentially responsive] hard-copy documents, some of which he said may relate to Blue Basin," would obviously not require the interested parties to turn over documents they knew in fact were unresponsive to the subpoena. Nonetheless, had Blue Basin and Mr. Laurain believed there were no responsive documents prior to the Court's deadline, they should have timely stated so. There is no

question they did not. Accordingly, the Court finds Blue Basin and Mr. Laurain's delay before conclusively stating there were no responsive documents to produce was unreasonable and in complete disregard of the Court's December 19, 2018 Order.

The Court, having found that LNC has demonstrated, by clear and convincing evidence, that Blue Basin and Mr. Laurain violated this Court's clear and specific Order to produce all responsive documents requested by the subpoena no later than December 28, 2018, turns to Blue Basin that now has the burden to articulate reasons why compliance was not possible, which this Court finds they have failed to do. Blue Basin and Mr. Laurain have stated that there are no responsive documents to produce and there is no evidence upon which the Court may conclude that this representation is inaccurate. Based on the representations made, and without the requested aid of some mechanism ensuring their veracity, the Court cannot order Blue Basin and Mr. Laurain to produce non-existent responsive documents. *Cf. NML Capital Ltd. v. Rep. of Argentina*, No. 2:14-cv-00492-RFB-VCF, 2014 WL 3898021, at *2 (D. Nev. Aug. 11, 2014). Again, however, Blue Basin and Mr. Laurain's belated response does not cure their contempt. Accordingly, the Court finds contempt sanctions are appropriate, and shall require Blue Basin and Mr. Laurain to pay LNC's reasonable attorney's fees and costs incurred in bringing its Motion to Compel.

As discussed extensively above, this Court previously held Blue Basin in contempt pursuant to Fed. R. Civ. P. 45(g). ECF No. 11 at 2:5-9. Consistent with the Court's instructions in its Order, LNC submitted a Memorandum of Attorney's fees and Costs ("Memorandum") and attached exhibits providing and substantiating: (1) a reasonable itemization and description of work performed; (2) the identities of the attorney(s) or staff member(s) performing the work; (3) the customary fee of the attorney(s) or staff member(s) for such work; and (4) the performance, reputation, and ability of the attorney performing the work. ECF No. 11 at 2:14-21. LNC also attached affidavits from its attorneys authenticating the information contained in the memorandum, providing a statement that the bill has been reviewed and edited, and a statement that fees and costs charged are reasonable. ECF No. 11 at 2:21-23; ECF No. 12-1, ¶¶ 4, 11-15; ECF No. 12-2, ¶¶ 4, 11-15. LNC has paid all of the invoiced attorney's fees and costs described in its Memorandum. ECF No. 12 at 2:16-17. In summary, LNC argues it has incurred a total of $33,930.00 in reasonable

attorney's fees and $1,528.54 in costs while preparing its motion to compel. ECF No. 12 at 7:2-6. On the other hand, Blue Basin and Mr. Laurain contend LNC is not entitled to any attorney's fees whatsoever, and its costs should be reduced to $372.24. ECF No. 17 at 12:2-3.

The Memorandum states that "a total of five attorneys from two law firms assisted in preparing LNC's successful Motion to Compel." ECF No. 12 at 3:3-4. The Court finds the accounting and itemization of time spent on the motion to compel by LNC's counsel in the underlying Louisiana action, Liskow & Lewis, is sufficiently detailed for the Court to grant attorney's fees and costs totaling $7,110. On the other hand, the Court finds the accounting and itemization of time spent on the motion to compel by LNC's Nevada counsel, Lewis Roca Rothgerber Christie, LLP ("LRRC") is deficient in this regard. The Court is inclined to grant Plaintiff's Motion for Attorney's fees, provided LNC submits an updated Memorandum and Support detailing the work LRRC performed, valued at or around $26,820. Therefore, this Court will deny Plaintiff's Motion for Attorney's fees without prejudice and grant Plaintiff leave to amend in accordance with the instructions above.

The Court finds unmeritorious Blue Basin and Mr. Laurain's arguments that they, not LNC, should recover reasonable attorney's fees and costs pursuant to Fed R. Civ. P. 45, Local Rules of Practice ("LR") IA 1-3(f)(3), and LR IA 11-8(c). First, Blue Basin and Mr. Laurain argue LNC should be sanctioned (and denied attorney's fees and costs) for failing to make a good faith effort to meet and confer before filing its Motion to Compel. ECF No. 18 at 13:3-24. This is a curious argument, because it is Blue Basin and Mr. Laurain's nonresponse that led to noncompliance with the Local Rules. Further, LNC's counsel "expressly represented to Attorney Garthe that, given Mr. Laurain's family emergency, LNC would not oppose a motion by Blue Basin for a reasonable extension of the Court's Deadline." ECF No. 13 at 4, n. 2; ECF No. 18 at 6, n.9. No such motion was filed by Blue Basin. Second, Blue Basin and Mr. Laurain argue they should be awarded reasonable attorney's fees and costs because of LNC's bad faith management of service and notice. ECF No. 18 at 14:1-17. The Court has already determined that this argument lacks merit. Third, Blue Basin and Mr. Laurain waived any arguments they had against this Court's award of attorney's fees and costs by failing to respond to LNC's Motion to Compel. ECF No. 11 at 1:14. LNC's

Motion to Compel, distinct from its Motion for Attorney's Fees, sought an award of incurred fees and costs resulting from Blue Basin's refusal to provide subpoenaed documents. ECF No. 1 at 6-7. Local Rule 7-2(d) provides, "[t]he failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion." By failing to respond to LNC's Motion to Compel, Blue Basin consented to this Court's grant of attorney's fees incurred as a result of filing said motion. Finally, and most importantly, the Court finds the interested parties are not entitled to reasonable attorney's fees and costs because they are in continued contempt of the Court's Order.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Contempt (ECF No. 13) is granted. The Court finds Blue Basin and Mr. Laurain are jointly and severally liable for LNC's reasonable attorney's fees and costs.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorney's fees (ECF No. 12) is DENIED without prejudice. The Court grants Plaintiff leave to amend to file a revised Memorandum and Support detailing the work LRRC performed, as well as the fees and costs Blue Basin and Mr. Laurain are required to jointly and severally pay, within ten (10) days of this Order.

DATED THIS 10th day of September, 2019.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE